# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| KEVIN L. GILES, | Case No. 2:24-cv-10137 |
| *Plaintiff,* | Nancy G. Edmunds<br>United States District Judge |
| v. | |
| | Patricia T. Morris<br>United States Magistrate Judge |
| CHRISTOPHER R. SWANSON, *Sheriff,* KAY UNKNOWN, *Nurse,* LIZ UNKNOWN, *Nurse,* JOHN DOE, *Officers,* GENESEE COUNTY JAIL, JOHN DOE, *Sgt,* MENTAL HEALTH. | |
| *Defendants.* | |
| _____/ | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the following reasons, **I RECOMMEND** that the Court **DISMISS** Plaintiff's complaint *sua sponte* under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted.

**II.  REPORT**

**A. INTRODUCTION**

Plaintiff filed the instant *pro se* complaint on January 17, 2024. (ECF No. 1). Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated when he was placed with 25 other prisoners in an unsanitary intake cell at the

1

Genesee County jail after having been transferred from the Milan federal facility on November 9, 2023, and when he was wrongfully placed on suicide watch and housed in a cell without a mat. (ECF No. 1, PageID.4, 16.) Plaintiff avers that after an "officer ask me do I want to get my sugar check [and] I told him no[,]" he was told he would have to "see the Nurse to refuse and sign a paper I said no problem." (ECF No. 1, PageID.16.) Then the "Sgt came over asking me [what is] the problem [and] I told him I'm upset because I had to sleep on a hard floor without a mat or blanket it was cold it was around 25 other prisoners in the intake cell." (*Id.*) He was then "taken to see Nurse Kelly and Nurse Liz, I told them I didn't want to get my sugar check they told the Sgt and officers to put me on suicide watch. I told the nurse she was wrong for doing this." (*Id.*) Plaintiff also told the "Sgt and an officer" that "they [were] wrong for putting me on suicide watch because I refuse to get my sugar check so the Sgt and another officer grab me and force me into another room while another officer was holding a stun gun on me. Once I was in the other room the Sgt told me to take off my jump suit and put on this suicide blanket I said no the Sgt and other officers force me in a chair and strapped me in the chair for 6 hours." (*Id.*) Plaintiff insisted he "was not telling anyone I wanted to kill myself of any kind, the nurse told me that Mental health said to put me on suicide watch." (ECF No. 1, PageID.17.)

2

### B. LEGAL STANDARD

Plaintiff is proceeding IFP, subjecting his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B). Since 1892, federal courts have possessed statutory power to permit civil actions IFP. *See Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016). That power, presently codified at 28 U.S.C. § 1915, is intended to ensure that indigent persons have equal access to the judicial system by allowing them to proceed without advancing the litigation fees and costs. *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).

Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To counteract these incentives, Congress crafted a screening procedure that requires the court to *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted

by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

The Supreme Court has established that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).[1] A complaint is also frivolous and can be dismissed if it provides no basis for federal jurisdiction. *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. 1999) ("Since there is no basis for federal jurisdiction apparent on the face of Carlock's complaint . . . the district court properly dismissed the action as frivolous and for lack of subject matter jurisdiction."); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (citing caselaw for the proposition that a complaint is frivolous and can be dismissed on screening if the subject matter is outside the court's jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

---

[1] The Court also held that the frivolousness analysis differed from the "failure to state a claim" analysis—a complaint might not be frivolous because it raises an arguable question of law but still fail to state a claim. *Id.* When *Neitzke* was decided, the statute allowed screening of frivolous or malicious claims, but had not yet been amended to permit screening for failure to state a claim. 28 U.S.C. § 1915(d). That amendment came in 1996. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, Title VIII, § 804, 110 Stat. 1321 (April 26, 1996).

### C. ANALYSIS

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he complains was committed by a person acting under color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id*. at 375–76; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Importantly, liability under § 1983 must be based on more than a theory of respondeat superior. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).

To prove a claim that a prisoner's Eighth Amendment right has been violated, the prisoner must show that the official was deliberately indifferent to his or her serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A viable Eighth Amendment claim has both an objective and subjective prong, requiring the inmate to show that (1) he had an objectively serious medical need, and (2) 'an official knew of [his] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably' to it." *Est. of Miller v. Michigan*

*Dep't of Corr.*, No. 22-10934, 2023 WL 122903, at *3 (E.D. Mich. Jan. 6, 2023); *see also Farmer*, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See id.* (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).

Since Plaintiff is a pretrial detainee, his claims fall under the Fourteenth Amendment, but courts have "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond v. Huq*, 885 F.2d 928, 937 6th Cir. 2018) (citation omitted). However, after the Supreme Court's opinion in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the subjective component analysis has been modified. Under current law, "a pretrial detainee establishes deliberate indifference by proving 'more than mere negligence but less than subjective intent – something akin to reckless disregard." *Brawner v. Scott Co., Tenn.*, 14 F.4th 585, 596–97 (6th Cir. 2021).[2]

As to Plaintiff's claims regarding the conditions in the intake cell, his allegations do not rise to the level of a constitutional deprivation. "Overcrowding in a prison is not itself a violation of the Constitution." *Shelton v. Christian County Jail*, No. 5:14-CV-P146, 2015 WL 236853, at *2 (W.D. Ky Jan. 16, 2015) (citing

---

[2] The standard is further modified with respect to failure to protect claims. See, *Westmoreland v. Butler Co., Ky*, 29 F.4th 721, 728-29 (6th Cir. 2022).

*Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981)). "Overcrowding conditions can be restrictive and even harsh; however, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities, Plaintiff's allegations that inmates must eat and sleep on the floor are not deprivations of the minimal civilized measures of Life's necessities." *Id*. (citation omitted); *Clayton v. Bedford Co. Sheriff's Dep't*, 2019 WL 4016209, at * 1-3 (E.D. Tenn. Aug. 26, 2019) (Plaintiff's allegations of unsanitary conditions, having to sleep on a thin mat close to a toilet, overcrowding, dirt fungi, rust and bacteria and lack of space for physical exercise in the intake cell at the county jail failed to state a claim because they were insufficient to infer the conditions "are so grave, extreme, and uncivilized as to trigger the protections of the Eighth Amendment.") Therefore, Plaintiff's allegations of overcrowding and sleeping on the floor are insufficient to state a constitutional violation. This conclusion is buttressed by the fact that, according to Plaintiff's complaint, he endured these conditions for only one day and then was moved to other cells while on suicide watch. In addition, short term deprivations are even less likely to fall beneath the minimal civilized measure of life's necessities. *See, e.g.*, *Ziegler v. Michigan*, 59 App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise for 6 or 10 days insufficient to state a constitutional claim); *Metcalf v. Velta*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (eight day denial of

7

showers, trash removal, cleaning and laundry insufficient to state a claim under the Eighth Amendment).

As to Plaintiff's complaint that he should not have been placed on suicide watch and subject to the restrictions that attend being placed on that watch, those allegations also fail to state a constitutional claim under the Eighth or Fourteenth Amendments. Placement on suicide watch, even if the subjective component could be met, "does not reach the threshold of objective seriousness sufficient to state a claim under the Eighth Amendment." *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *7 (W.D. Mich. Sept. 25, 2020). The Court in *Evans* recognized that those placed on suicide watch are "denied certain privileges and subject to discomfort" but concluded that those denials do not deny a prisoner of the minimal civilized measure of life's necessities sufficient to rise to the level of a constitutional violation. *Id*. In the instant case, Plaintiff admits that he twice refused to have his "sugar" checked. (ECF No. 1, PageID.16). Refusal to avoid the grave consequences that are possible if one's diabetes is not controlled could be viewed as an attempt to harm oneself despite Plaintiff's protests to the contrary. *Kinsey v. County of Lorain*, 2019 WL 315055, at *8 (N.D. Ohio Jan. 23, 2019) ("[E]ven accepting plaintiff's averment that he has never contemplated suicide…it was certainly not objectively unreasonable to err on the side of caution and place plaintiff in the special needs unit for suicide watch."). Finally, Plaintiff's allegations that he was grabbed and that a

8

stun gun was held on him but was not used, do not "cross the constitutional line." *Hanson v. Madison Co. Detention Center*, 736 F. App'x 521, 530 (6th Cir. May 22, 2018) (pushes and shoves, use of knees to restrain and handcuff a defendant do not rise to the level of a constitutional claim).

For all the reasons stated above, I recommend the Complaint be dismissed in its entirety for failure to state a claim upon which relief can be granted.

### III. CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report

9

and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 29, 2024               S/PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge